M 08-0033

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION FOR SEARCH WARRANTS FOR THE PREMISES KNOWN AND DESCRIBED AS:

(1) A ONE-STORY "EMPIRE SZECHUAN" RESTAURANT WITH A GRAY EXTERIOR AND LIGHT GREEN AWNING WITH "EMPIRE SZECHUAN" WRITTEN ON THE AWNING, LOCATED AT 6600 JERICHO TURNPIKE, SYOSSET, NEW YORK (SUBJECT PREMISES #1);

(2) A ONE-STORY "EMPIRE SZECHUAN" RESTAURANT WITH A GRAY EXTERIOR AND LIGHT GREEN AWNING WITH "EMPIRE SZECHUAN" WRITTEN ON THE AWNING, LOCATED AT 849 WALT WHITMAN ROAD, MELVILLE, NEW YORK (SUBJECT PREMISES #2);

(3) A ONE-STORY "EMPIRE SZECHUAN" RESTAURANT WITH A GRAY EXTERIOR AND LIGHT GREEN AWNING WITH "EMPIRE SZECHUAN" WRITTEN ON THE AWNING, LOCATED AT 92 EAST MAIN STREET, HUNTINGTON, NEW YORK (SUBJECT PREMISES #3); AND

(4) A ONE-STORY OFF-WHITE RESIDENCE OF GILBERT CHANG WITH AN ATTACHED TWO-CAR GARAGE, LOCATED AT 24 WINDEMERE WAY, WOODBURY, NEW YORK (SUBJECT PREMISES #4).

- - - - - - - - - - - - - - - - - - - - -X

AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

(T. 31, U.S.C., § 5324(a))
(T. 26, U.S.C., § 7206(1))

EASTERN DISTRICT OF NEW YORK, SS:

ERIC SULLIVAN, being duly sworn, deposes and says that he is a Special Agent with the United States Department of the Treasury, Internal Revenue Service, Criminal Investigations, duly appointed according to law and acting as such.

Upon information and belief, there is probable cause to

believe that there is kept and concealed within: (1) A ONE-STORY "EMPIRE SZECHUAN" RESTAURANT WITH A GRAY EXTERIOR AND LIGHT GREEN AWNING WITH "EMPIRE SZECHUAN" WRITTEN ON THE AWNING, LOCATED AT 6600 JERICHO TURNPIKE, SYOSSET, NEW YORK (SUBJECT PREMISES #1); (2) A ONE-STORY "EMPIRE SZECHUAN" RESTAURANT WITH A GRAY EXTERIOR AND LIGHT GREEN AWNING WITH "EMPIRE SZECHUAN" WRITTEN ON THE AWNING, LOCATED AT 849 WALT WHITMAN ROAD, MELVILLE, NEW YORK (SUBJECT PREMISES #2); (3) A ONE-STORY "EMPIRE SZECHUAN" RESTAURANT WITH A GRAY EXTERIOR AND LIGHT GREEN AWNING WITH "EMPIRE SZECHUAN" WRITTEN ON THE AWNING, LOCATED AT 92 EAST MAIN STREET, HUNTINGTON, NEW YORK (SUBJECT PREMISES #3); AND (4) ONE-STORY OFF-WHITE RESIDENCE OF GILBERT CHANG WITH AN ATTACHED TWO-CAR GARAGE, LOCATED AT 24 WINDEMERE WAY, WOODBURY, NEW YORK (SUBJECT PREMISES #4) (collectively the "SUBJECT PREMISES"), depicted in the photographs in Exhibit B, the following items:

a. Large amounts of United States Currency, which are the subject of the structuring activities described above;

b. Corporate records for the businesses described above, including, but not limited to, records reflecting the incorporation and registrations of the businesses, corporate minutes, stock registers, or other records reflecting ownership of corporate stock, and board lists and/or other records reflecting the identities of the corporate officers;

c. Documents referring or relating to the earnings and/or expenses of the businesses describe above, including, but not limited to, corporate bookkeeping records and other financial records, gross receipts and income records, cash receipts and disbursement records and/or journals, sales and

purchase records and/or journals, accounts receivables and payable ledgers and records, bad debt records, cost of goods sold records, loan records, including applications, financial statements, and collateral, loan agreements, notes, or mortgages, loan contracts, loan receivable and payable ledgers, sales and expense invoices including all invoices documenting expenses paid by cash (currency) or bank check (cashier or teller checks) and retained copies of any bank checks (cashier or teller checks);

d. Documents, statements, and correspondence related to the preparation of corporate records and/or tax returns for the businesses and individuals described above, including, but not limited to, bookkeepers' and/or accountant's work papers, as well as retained copies of all federal and state income, payroll, and excise tax returns. Personnel records for the businesses described above, including, but not limited to, work schedules, salaries, benefits, resumes' and payroll records;

e. All savings and checking account records for the businesses and individuals described above, including but not limited to, passbooks or bank statements, records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, records reflecting the identity of checks deposited or drawn on the accounts, withdrawal slips, and records disclosing the disposition of withdrawals, Forms 1099, debit and credit memos, as well as records of any certificates of deposit; money market certificates, U.S. Treasury notes or bills purchased;

f. Any and all other banking and brokerage firm account statements, transaction records, wire transfer instructions and records, receipts, notes, ledgers, checks, cash receipts journals, Federal Reserve routing numbers, passbooks, safe deposit keys, and similar documents and items concerning the receipt, transfer, or secreting of funds in connection with the businesses and/or accounts described above;

g. Correspondence and communication between and among co-conspirators, employees, partners, and/or other participants in such activities, as well as records

thereof, including, but not limited to, telephone bills and records, telephone message pads, notes and memoranda, automatic telephone dialing devices and the contents of such devices, telephone number identification devices and the contents of such devices, telephone answering devices and the contents of such devices, telephone subscriber applications, letters, mail, handwritten correspondence and/or notes, FedEx air bills, audio tapes, video tapes, and other documents concerning or reflecting such correspondence and/or communications;

h. Records identifying co-conspirators, employees, partners, and/or other participants in such activities or in the businesses described above, including, but not limited to identification documents, address books, telephone books, rolodex indices, diaries, calendars, personal notes reflecting telephone and pager numbers, photographs (including still photos, negatives, movies, slides, video tapes, and undeveloped film), and audio tape recordings of conversations, including those made surreptitiously, knowingly, and over telephone answering machines, as well as any other documents concerning or reflecting information regarding the identities of other persons who may have knowledge of facts relevant to the charges at issue.

i. Safes, key-lock strong boxes, suitcases, locked cabinets, concealed storage departments, and other types of locked, closed, and/or hidden containers that may be used to store and secrete United States currency, books, records, documents, financial instruments, and other items of the sort to prevent the discovery of theft of such items; and

j. Computers and other associated computer equipment used to store information relating to the illegal activities, businesses, and/or accounts described above, including, but not limited to, central processing units, external and internal hard drives, external and internal storage equipment or media, terminals or video display units, optical scanners, network servers, electronic mail records, e-mails, CD ROMs, DVDs and other magnetic storage media, computer software, manuals relating to software, files, data and information contained thereon, computerized data storage devices,

> including data stored on hard disks or floppy disks, computer printouts or computer programs, computer or data processing software or data, electronic organizer devices and the contents of such devices, computerized appointment schedules and diaries, drafts and final versions of documents and correspondence prepared in furtherance of such activities, peripheral equipment such as keyboards, printers, printer buffers, modems or acoustic couplers, fax machines (and data included therein), and magnetic tapes that could contain or be used to transmit or store any of the foregoing records, documents, and materials, along with documentation explaining operation of the computer system, including any and all passwords and any back-up tapes,

all of which constitute evidence or instrumentalities of the crimes of structuring currency transactions in violation of Title 31, U.S.C., Section 5324(a) and filing false statements in violation of Title 26, U.S.C., Section 7206(1).

The source of your deponent's information and the grounds for his belief are as follows:

INTRODUCTION

1. I am currently employed as a Special Agent with the Department of the Treasury, Internal Revenue Service, Criminal Investigation ("IRS-CI") and have been so employed for approximately 6 years. I have personally participated in this investigation and I make this affidavit, in part, upon personal knowledge based on my participation in this investigation and, in part, upon information and belief. The source of my information and belief include conversations with other law enforcement officers and my review of records, documents, and reports made by others.

Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of this investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, unless otherwise indicated.

2. For approximately the past three years, I have been a member of the New York Asset Forfeiture Task Force investigating violations of various federal statutes and regulations governing the structuring of cash transactions to avoid various reporting requirements.

3. As a result of my experience in the area of financial transaction investigations, I am aware of the following:

STATUTORY AUTHORITY

CURRENCY REPORTING REQUIREMENTS

(a) Transactions in currency are defined as transactions involving the physical transfer of money, as defined in Title 31, Code of Federal Regulations, Section 103.11.

(b) Domestic financial institutions are required by law and regulation to file a Currency Transaction Report (IRS Form 4789, hereafter referred to as a "CTR") with the Internal Revenue Service for each transaction in currency, such as a deposit, withdrawal, exchange of currency or other payment or transfer by, through or to a financial institution, in excess of $10,000.00, as required by Title 31, United States Code, Section 5313 and Title

31, Code of Federal Regulations, Section 103.22(b). Title 31, United States Code, Section 5312(a)(2)(V) states that the United States Postal Service is a "financial institution" for purposes of Title 31.

(c) CTRs are filed with the Internal Revenue Service on forms which require, among other things, the identity of the individual who conducted the transaction and the individual or organization for whom the transaction was completed.

(d) CTRs are required to be filed to assist the government in criminal, tax and regulatory investigations and proceedings, as stated in Title 31, Code of Federal Regulations, Section 103.15.

(e) "Structuring" financial transactions means the breaking down of amounts of currency into amounts of $10,000.00 or less prior to transacting business with one or more domestic financial institutions or businesses in an attempt to evade currency reporting requirements.

4. Based on my training and experience investigating cases involving the concealment of funds and assets from the detection of law enforcement agents, I know that individuals and organizations sometimes structure cash transactions involving more than $10,000 in order to evade the filing of CTR's, and thus avoiding having their transactions reported to the government. In order to "structure" cash transactions to avoid the filing of CTRs, individuals often break large amounts of cash into amounts less

than $10,000 for the purposes of their transactions.

SUSPECTED TAX VIOLATION

(a) The activities described herein, and as applied to GILBERT CHANG, constitute willfully subscribing to false or fraudulent 1120 Corporate Income Tax Returns made under the penalties of perjury for the years 2003, 2004 and 2005 (Title 26, United States Code, Section 7206 (1)). The statute of limitations for Title 26 U.S.C. §7206(1) is six years from the date tax returns are due or the date the tax returns are filed, whichever date is later.

STATEMENT OF FACTS

5. Law enforcement agents have been investigating GILBERT CHANG ("CHANG"), doing business as Empire Szechuan Inc., Fortune on Jericho Inc., Empire Szechuan East Inc. and J & C Main Street Inc., for possible violations of 31 U.S.C. § 5324(a) and Title 26 U.S.C. § 7206(1) during the period from May 10, 2002, through the present.

6. The investigation has revealed that GILBERT CHANG owns and/or controls a large number of corporations under the laws of New York State: Empire Szechuan Inc., Empire Szechuan East Inc., J&C Main Street Inc., CC Huntington Realty Inc., Empire Huntington Corp., TNC Reality Corp., Empire Westbury Corp., TNT Racing Inc., and Chang R8cing Dynasty Inc. For the purpose of this affidavit Empire Szechuan Inc., Empire Szechuan East Inc. and J&C Main Street Inc. (the "TARGET BUSINESSES") will be discussed in greater detail.

7. The TARGET BUSINESSES are corporations that operate as Chinese restaurants within Nassau and Suffolk Counties, New York. The TARGET BUSINESSES currently maintain separate bank accounts, which are all located at the Washington Mutual Bank, FA ("WAMU") branch at 277 Jericho Turnpike, Syosset, New York. Prior to WAMU maintaining these business accounts, all of the TARGET BUSINESSES' accounts were at Hong Kong Shangai Banking Corp.'s ("HSBC") branch at 603 Jericho Turnpike, Syosset, New York.

8. As set forth below, GILBERT CHANG engaged in structuring of money transactions is evidenced by the pattern of cash withdrawals in the form of checks written to cash of which all are broken down into amounts of less than $10,000. In some instances, multiple withdrawals of less than $10,000 in cash were made from the same account on the same day.

9. Attached hereto as Exhibit A is a chart depicting the business accounts for Empire Szechuan Inc. (HSBC 954-70283-2, WAMU 180-062600-4), Empire Szechuan East Inc. (HSBC 954-70315-4, WAMU 180-062603-8) and J & C Main Street Inc. (HSBC 954-70387-0, WAMU 180-062601-2) and the amounts of cash withdrawn from those accounts from May 10, 2002 through April 30, 2007. Exhibit A reveals that GILBERT CHANG structured cash withdrawals totaling approximately $2,933,550.00 out of the HSBC and WAMU corporate business checking accounts.

10. During this investigation, your deponent and other agents have examined numerous financial documents relating to

GILBERT CHANG and his corporations, including but not limited to the TARGET BUSINESSES. Included among those documents were federal and state tax returns purportedly filed by GILBERT CHANG. A comparison of GILBERT CHANG's financial information to the amounts he withdrew from his corporate (as shown in Exhibit A) and personal accounts reveals a significant under-reporting of his income. Thus, based upon my experience, it is your deponent's belief that GILBERT CHANG's daily cash transactions are done to avoid the filing of CTRs in an attempt to avoid notification of the TARGET BUSINESSES' true income to the Internal Revenue Service.

11. A check of the New York State Corporation records indicates that Empire Szechuan Inc. is an inactive corporation which was once a Chinese restaurant. In or about May 2006, Fortune on Jericho Inc. became the controlling and operating corporation for the Empire Szechuan Chinese Restaurant located at SUBJECT PREMISES #1. The corporate address for both Empire Szechuan Inc. and Fortune on Jericho Inc. is listed in various state records as SUBJECT PREMISES #1. These records also reflect that GILBERT CHANG is the owner of Empire Szechuan Inc. and Fortune on Jericho Inc., and that Empire Szechuan was incorporated on June 29, 1992 and is currently inactive. Fortune on Jericho Inc. was incorporated on May 30, 2006 and is currently active. A review of banking records and/or mail record checks performed by your deponent and/or U.S. Postal Inspectors assigned to the New York Asset Forfeiture Task

Force revealed that Empire Szechuan receives mail at SUBJECT PREMISES #1 and SUBJECT PREMISES #4.

12. A check of the New York State Corporation records indicates that Empire Szechuan East Inc. is a Chinese Restaurant located in Melville, New York. Empire Szechuan East Inc.'s corporate address is listed in various state and federal records as SUBJECT PREMISES #2. These records also reflect that GILBERT CHANG is the owner of Empire Szechuan East Inc. A review of banking records and/or mail record checks performed by your deponent and/or U.S. Postal Inspectors assigned to the New York Asset Forfeiture Task Force revealed that Empire Szechuan East Inc. receives mail at SUBJECT PREMISES #2 and SUBJECT PREMISES #4.

13. A check of the New York State Corporation records indicates that J&C Main Street Inc. is a Chinese Restaurant located in Huntington, New York. J&C Main Street Inc.'s corporate address is listed in various state and federal records as SUBJECT PREMISES #3. These records also reflect that GILBERT CHANG is the owner of J&C Main Street Inc. A review of banking records and/or mail record checks performed by your deponent or U.S. Postal Inspectors assigned to the New York Asset Forfeiture Task Force revealed that J&C Main Street Inc. receives mail at SUBJECT PREMISES #3 and SUBJECT PREMISES #4.

14. As set forth in Exhibit A, a review of bank records has revealed that GILBERT CHANG has structured cash withdrawals

totaling approximately $1,132,900.00 from J&C main Street's corporate accounts located at HSBC and WAMU.

Knowledge of CTRs

15. In or about the May 2003, the TARGET BUSINESSES' corporate bank accounts were all maintained at HSBC's branch at 603 Jericho Turnpike, Syosset, New York 11791. A bank manager at HSBC's Syosset branch advised agents that GILBERT CHANG was interviewed in the summer of 2003 by the HSBC Syosset branch manager about his withdrawal activities. During this meeting, it was explained to GILBERT CHANG that all of his accounts were reviewed, and it was determined that he was structuring his cash withdrawals to avoid the CTR filing requirements. The HSBC Syosset branch manager also explained to GILBERT CHANG that it is a crime in the United States to structure cash withdrawals to fall below the reporting requirements. When asked for a reason for his structuring activity, GILBERT CHANG first stated he was afraid of being robbed, and that is why he avoided carrying in excess of $10,000 in cash. Later in the conversation, GILBERT CHANG reluctantly disclosed, under the threat of his business checking accounts being closed, that he pays all of his vendors and employees in cash.

16. The HSBC Syosset branch manager, in or about the beginning of 2005, did a follow-up review of GILBERT CHANG'S corporate accounts. The branch manager quickly realized that GILBERT CHANG had in fact continued to structure withdrawals from

his corporate bank accounts, but instead of writing one check to cash in an amount between $9,250 and $9,800, he wrote multiple checks to cash each in the approximate amount of $4,800. CHANG'S method of withdrawals was systematically causing the financial institution not to file CTRs. The Syosset branch manager told GILBERT CHANG that one of his accounts was reviewed, and GILBERT CHANG was asked why he was withdrawing approximately $4,800 instead of the original amount. GILBERT CHANG stated business was slow, and that was the reason for the lower amount being withdrawn. Subsequently, an analysis proved that in fact more money was being deposited into GILBERT CHANG'S corporate accounts, which would suggest an increase in business. Furthermore, GILBERT CHANG had actually structured out a larger amount of cash within a shorter period of time under his new method. As a consequence, all of GILBERT CHANG'S accounts at HSBC were closed and he began banking at WAMU. An analysis of bank statements from the WAMU accounts has shown GILBERT CHANG'S structuring activities have continued.

17. GILBERT CHANG'S daily account balances in his corporate accounts ranged from $10,000 to $40,000. Only on a few occasions did CHANG'S account balances fall below $10,000. GILBERT CHANG consistently had access to over $10,000 when making his withdrawals, yet routinely withdrew less than $10,000 in order to avoid the filing requirements. The checks used to perpetrate this fraud were made payable to cash and were endorsed by GILBERT CHANG.

18. On June 15, 2001, GILBERT CHANG had a CTR filled out

by the Mirage Hotel Casino for cashing out $11,500. GILBERT CHANG presented identification showing his address as SUBJECT PREMISES #4. The casino explained the reporting requirements and why identification was needed. GILBERT CHANG also had a CTR filed on him by HSBC on May 16, 2005, for withdrawing $19,600 in cash out of his corporate bank accounts.

The TARGET BUSINESSES' Accounts

19. This investigation has revealed that from on or about May 10, 2002 through April 30, 2007,[1] GILBERT CHANG has personally structured checks written to cash from the HSBC Empire Szechuan Inc. corporate business checking account (account number 954-70283-2), the HSBC Empire Szechuan East Inc. corporate business checking account (account number 954-70315-4), and the HSBC J&C Main Street Inc. corporate business checking account (account number 954-70387-0) at HSBC's Syosset branch. A detailed schedule of these structured cash withdrawals has been attached hereto as Exhibit A. All of the withdrawals referenced in Exhibit A reflect cash withdrawals of U.S. currency.

20. This investigation has also revealed that from on or about June 8, 2005 through April 30, 2007, GILBERT CHANG has

---

[1] Although I have not obtained further records since April 30, 2007, I have been informed by bank officials at WAMU that the TARGET BUSINESSES continue to maintain their corporate bank accounts at WAMU, and the activity in these accounts continues to show structuring activity. Moreover, based on my experience, records of the nature sought in this search warrant are typically kept for at least one year after the time the records are generated.

personally structured checks written to cash from the WAMU Empire Szechuan Inc. corporate business checking account (account number 180-062600-4), the WAMU Empire Szechuan East Inc. corporate business checking account (account number 180-062603-8), and the WAMU J&C Main Street Inc. corporate business checking account (account number 180-062601-2) at WAMU's Syosset branch. A detailed schedule of these structured cash deposits has been attached hereto as Exhibit A. All of the withdrawals referenced in Exhibit A reflect cash withdrawals of U.S. currency.

21. Law enforcement agents have reviewed the corporate banking resolutions for the Empire Szechuan Inc. account and the Empire Szechuan East Inc. account at both HSBC and WAMU, and have determined that the corporate banking resolutions bore the signature of GILBERT CHANG. A comparison was made from the handwriting on the corporate banking resolutions to the signatures on various endorsements on the backs of the Empire Szechuan Inc. checks and the Empire Szechuan East Inc. checks, as well as the signature line on the front of the checks. This comparison revealed that all the signatures appeared to match.

22. Law enforcement agents have reviewed the corporate banking resolutions for the J&C Main Street Inc. account at HSBC and have determined that the corporate banking resolutions did not bare the signature of GILBERT CHANG. However, every check written to cash which was successfully structured out of the corporate checking account was signed by GILBERT CHANG and they were also

endorsed on the back of the checks with GIBERT CHANG'S signature. Approximately every other check out of this account was signed by one of the two other authorized signatures on the account.

23. Law enforcement agents have also reviewed and compared the corporate checking accounts of the TARGET BUSINESSES to their Federal Corporate Income Tax Returns. It has been discovered that no cash proceeds from the TARGET BUSINESSES have ever been deposited into the corporate checking accounts. The only deposits into the accounts consist of credit card settlement deposits, which are alleged to be the credit card receipts from the restaurant. Furthermore, the Federal Corporate Income Tax Returns reflect gross receipts equal to the credit card deposits into the corporate checking accounts. In the tax years 2003, 2004 and 2005 no cash proceeds from any of the TARGET BUSINESSES were ever included in the gross receipts reported to the Internal Revenue Service. The restaurants all accept cash, and based on a comparison with other local restaurants it is probable that the restaurants' cash receipts to roughly equal their credit card receipts.

24 Windemere Way, Woodbury, NY

24. 24 Windemere Way, Woodbury, NY ("SUBJECT PREMISES #4") is the residence of GILBERT CHANG. Over the course of the investigation, law enforcement personnel have confirmed that SUBJECT PREMISES #4 is receiving corporate mail for all of the corporations owned and/or operated by GILBERT CHANG, including the

TARGET BUSINESSES. SUBJECT PREMISES #4 is also listed with the State of New York as the corporate headquarters for TNC Realty Corp., CC Huntington Realty Inc., Empire Westbury Corp., Empire Huntington Corp and Chang R8cing Dynasty Inc. Based on experience gained over the course of my career it reasonable to expect that GILBERT CHANG retains business records at the location where business correspondence is received.

Surveillance

25. Surveillance and additional investigative steps have revealed that Empire Szechuan Inc. and Fortune on Jericho Inc. were and are employing and transporting four illegal immigrants to SUBJECT PREMISES #1 to work in the restaurant. On January 26, 2006, a car stop was conducted by law enforcement personnel on a van containing eleven individuals. The van was pulling out of the restaurant parking lot at SUBJECT PREMISES #1. All of the individuals in the van were identified. The identifications were crossed referenced with law enforcement databases and it was confirmed that there were four illegal immigrants in the van. All the individuals stated they were being driven home to Queens, New York after working all day in the restaurant at SUBJECT PREMISES #1. At the time of the stop, the van was registered in New York State under the Corporate name Empire Szechuan Inc. Currently the van is registered in New York State under the corporate name Fortune on Jericho Inc. Other surveillance has confirmed that the other two restaurants, located at SUBJECT PREMISES #2 and #3, also

have vans registered under each corresponding corporation. All of the vans have been observed transporting employees to and from Queens, New York.

26. The identifications of the eleven individuals were crossed checked with state and federal filings. It has been corroborated that only one of the individuals identified as working at SUBJECT PREMISES #1 is listed on the business's payroll for that quarter. All of the other individuals are not listed on any corporate filings for Federal or State. As noted above, the HSBC branch manager was specifically told by GILBERT CHANG that the restaurant pays all of their employees in cash.

a. SUBJECT PREMISES #4 is known to have received business correspondence for each of the TARGET BUSINESSES.

b. SUBJECT PREMISES #1 is located on the south side of Jericho Turnpike, Syosset, New York and consists of one building.

c. SUBJECT PREMISES #2 is located on the east side of Walt Whitman Road (Route 110), Melville, New York and consists of one building.

d. SUBJECT PREMISES #3 is located at the intersection of East Main Street and N Woodhull Road, Huntington, New York and consists of one building.

e. SUBJECT PREMISES #4 sits on the west side of Windemere Way, Syosset, New York. State records and mortgage documents show that GILBERT CHANG is the listed owner of SUBJECT PREMISES #4. In

addition, agents conducting the surveillance referenced above determined that GILBERT CHANG resides at SUBJECT PREMISES #4.

REQUEST TO SEARCH

27. In summary, the evidence discussed above establishes that GILBERT CHANG both attempted to cause and, caused HSBC and WAMU to fail to file CTRs by structuring portions of cash withdrawals out of the Empire Szechuan Inc., Empire Szechuan East Inc. and J&C Main Street Inc. accounts at HSBC and WAMU. Specifically, the evidence shows that GILBERT CHANG had knowledge of CTR requirements, and prior to the interview, GILBERT CHANG systematically withdrew cash just under $10,000.00. After the interview took place discussing his illegal structuring activity, GILBERT CHANG proceeded to withdraw cash in lesser amounts, but with greater frequency. GILBERT CHANG moved his corporate bank accounts to WAMU after HSBC closed his accounts due to his structuring activity; GILBERT CHANG reverted back to his old methods of withdrawals in amounts just under the $10,000.00 threshold at the new bank: WAMU. Moreover, GILBERT CHANG was listed as an owner of Empire Szechuan Inc. and Empire Szechuan East Inc. on the corporate resolutions at HSBC but was not listed as an authorized signature on the corporate account for J&C Main Street. However, GILBERT CHANG was the signature on both sides of the checks made out to cash that were withdrawn from the J&C Main Street Inc. corporate account. Approximately every other corporate check was signed by the authorized signatures on the account.

GILBERT CHANG is currently listed as an owner of, and authorized signatory for, the TARGET BUSINESSES' corporate accounts at WAMU.

28.  The records also establish that GILBERT CHANG has not deposited any cash proceeds from the TARGET BUSINESSES during the years under investigation into any corporate or personal bank accounts.  Further, no cash was included as part of the gross receipts reported tot he Internal Revenue Service for any of the TARGET BUSINESSES for 2003, 2004 and 2005.  Based on my experience, it is probable that the cash receipts for the TARGET BUSINESSES to roughly equal their credit card receipts.

29.  GILBERT CHANG has already admitted to an HSBC branch manager that he has a cash payroll and pays all of his vendors in cash.  GILBERT CHANG is employing and transporting illegal immigrants to and from the TARGET BUSINESSES with vans owned by the TARGET BUSINESSES.  Furthermore, the illegal immigrants and several other individuals identified as working in the restaurants are not listed as employees on Federal and State tax filings for the TARGET BUSINESSES.  The names and social security numbers listed on the Federal and State filings for the TARGET BUSINESSES do not correspond to the actual employees at the TARGET BUSINESSES.

30.  Based upon the facts set forth above, as well as my training and experience, I know that those involved in structuring financial transactions to evade reporting requirements frequently maintain in their possession, within their places of business, for

substantial periods of time, the following sorts of materials that evidence the operation of such illegal activities:

     a.    Large amounts of United States Currency, which are the subject of the structuring activities described above;

     b.    Corporate records for the businesses described above, including, but not limited to, records reflecting the incorporation and registrations of the businesses, corporate minutes, stock registers, or other records reflecting ownership of corporate stock, and board lists and/or other records reflecting the identities of the corporate officers;

     c.    Documents referring or relating to the earnings and/or expenses of the businesses describe above, including, but not limited to, corporate bookkeeping records and other financial records, gross receipts and income records, cash receipts and disbursement records and/or journals, sales and purchase records and/or journals, accounts receivables and payable ledgers and records, bad debt records, cost of goods sold records, loan records, including applications, financial statements, and collateral, loan agreements, notes, or mortgages, loan contracts, loan receivable and payable ledgers, sales and expense invoices including all invoices documenting expenses paid by cash (currency) or bank check (cashier or teller checks) and retained copies of any bank checks (cashier or teller checks);

     d.    Documents, statements, and correspondence related to the preparation of corporate records and/or tax returns for the businesses and individuals described above, including, but not limited to, bookkeepers' and/or accountant's work papers, as well as retained copies of all federal and state income, payroll, and excise tax returns. Personnel records for the businesses described above, including, but not limited to, work schedules, salaries, benefits, resumes' and payroll records;

     e.    All savings and checking account records for the businesses and individuals described above, including but not limited to, passbooks or bank

statements, records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, records reflecting the identity of checks deposited or drawn on the accounts, withdrawal slips, and records disclosing the disposition of withdrawals, Forms 1099, debit and credit memos, as well as records of any certificates of deposit; money market certificates, U.S. Treasury notes or bills purchased;

f.   Any and all other banking and brokerage firm account statements, transaction records, wire transfer instructions and records, receipts, notes, ledgers, checks, cash receipts journals, Federal Reserve routing numbers, passbooks, safe deposit keys, and similar documents and items concerning the receipt, transfer, or secreting of funds in connection with the businesses and/or accounts described above;

g.   Correspondence and communication between and among co-conspirators, employees, partners, and/or other participants in such activities, as well as records thereof, including, but not limited to, telephone bills and records, telephone message pads, notes and memoranda, automatic telephone dialing devices and the contents of such devices, telephone number identification devices and the contents of such devices, telephone answering devices and the contents of such devices, telephone subscriber applications, letters, mail, handwritten correspondence and/or notes, FedEx air bills, audio tapes, video tapes, and other documents concerning or reflecting such correspondence and/or communications;

h.   Records identifying co-conspirators, employees, partners, and/or other participants in such activities or in the businesses described above, including, but not limited to identification documents, address books, telephone books, rolodex indices, diaries, calendars, personal notes reflecting telephone and pager numbers, photographs (including still photos, negatives, movies, slides, video tapes, and undeveloped film), and audio tape recordings of conversations, including those made surreptitiously, knowingly, and over telephone answering machines, as well as any other documents concerning or reflecting information regarding the

identities of other persons who may have knowledge of facts relevant to the charges at issue.

i. Safes, key-lock strong boxes, suitcases, locked cabinets, concealed storage departments, and other types of locked, closed, and/or hidden containers that may be used to store and secrete United States currency, books, records, documents, financial instruments, and other items of the sort to prevent the discovery of theft of such items; and

j. Computers and other associated computer equipment used to store information relating to the illegal activities, businesses, and/or accounts described above, including, but not limited to, central processing units, external and internal hard drives, external and internal storage equipment or media, terminals or video display units, optical scanners, network servers, electronic mail records, e-mails, CD ROMs, DVDs and other magnetic storage media, computer software, manuals relating to software, files, data and information contained thereon, computerized data storage devices, including data stored on hard disks or floppy disks, computer printouts or computer programs, computer or data processing software or data, electronic organizer devices and the contents of such devices, computerized appointment schedules and diaries, drafts and final versions of documents and correspondence prepared in furtherance of such activities, peripheral equipment such as keyboards, printers, printer buffers, modems or acoustic couplers, fax machines (and data included therein), and magnetic tapes that could contain or be used to transmit or store any of the foregoing records, documents, and materials, along with documentation explaining operation of the computer system, including any and all passwords and any back-up tapes.

31. Accordingly, based on the facts set forth in this affidavit, as well as my training and experience, I respectfully submit that there is probable cause to believe that the items described in paragraph 30 above are presently concealed in the following locations: (1) A ONE-STORY "EMPIRE SZECHUAN" RESTAURANT

WITH A GRAY EXTERIOR AND LIGHT GREEN AWNING WITH "EMPIRE SZECHUAN" WRITTEN ON THE AWNING, LOCATED AT 6600 JERICHO TURNPIKE, SYOSSET, NEW YORK (SUBJECT PREMISES #1); (2) A ONE-STORY "EMPIRE SZECHUAN" RESTAURANT WITH A GRAY EXTERIOR AND LIGHT GREEN AWNING WITH "EMPIRE SZECHUAN" WRITTEN ON THE AWNING, LOCATED AT 849 WALT WHITMAN ROAD, MELVILLE, NEW YORK (SUBJECT PREMISES #2); (3) A ONE-STORY "EMPIRE SZECHUAN" RESTAURANT WITH A GRAY EXTERIOR AND LIGHT GREEN AWNING WITH "EMPIRE SZECHUAN" WRITTEN ON THE AWNING, LOCATED AT 92 EAST MAIN STREET, HUNTINGTON, NEW YORK (SUBJECT PREMISES #3); AND (4) ONE-STORY OFF-WHITE RESIDENCE OF GILBERT CHANG WITH AN ATTACHED TWO-CAR GARAGE, LOCATED AT 24 WINDEMERE WAY, WOODBURY, NEW YORK (SUBJECT PREMISES #4) and that such items are fruits, evidence, and instrumentalities of violations of federal law, including violations of Title 31, United States Code, Section 5324 and Title 26, United States Code, Section7206(1).

WHEREFORE, your deponent respectfully requests that search warrants be issued authorizing your deponent or any Special Agent of the I.R.S., with proper assistance from other law enforcement officers, to search (1) A ONE-STORY "EMPIRE SZECHUAN" RESTAURANT WITH A GRAY EXTERIOR AND LIGHT GREEN AWNING WITH "EMPIRE SZECHUAN" WRITTEN ON THE AWNING, LOCATED AT 6600 JERICHO TURNPIKE, SYOSSET, NEW YORK (SUBJECT PREMISES #1); (2) A ONE-STORY "EMPIRE SZECHUAN" RESTAURANT WITH A GRAY EXTERIOR AND LIGHT GREEN AWNING WITH "EMPIRE SZECHUAN" WRITTEN ON THE AWNING, LOCATED AT 849 WALT WHITMAN ROAD, MELVILLE, NEW YORK (SUBJECT PREMISES #2); (3) A ONE-

STORY "EMPIRE SZECHUAN" RESTAURANT WITH A GRAY EXTERIOR AND LIGHT GREEN AWNING WITH "EMPIRE SZECHUAN" WRITTEN ON THE AWNING, LOCATED AT 92 EAST MAIN STREET, HUNTINGTON, NEW YORK (SUBJECT PREMISES #3); AND (4) ONE-STORY OFF-WHITE RESIDENCE OF GILBERT CHANG WITH AN ATTACHED TWO-CAR GARAGE, LOCATED AT 24 WINDEMERE WAY, WOODBURY, NEW YORK (SUBJECT PREMISES #4) for the following:

a. Large amounts of United States Currency, which are the subject of the structuring activities described above;

b. Corporate records for the businesses described above, including, but not limited to, records reflecting the incorporation and registrations of the businesses, corporate minutes, stock registers, or other records reflecting ownership of corporate stock, and board lists and/or other records reflecting the identities of the corporate officers;

c. Documents referring or relating to the earnings and/or expenses of the businesses describe above, including, but not limited to, corporate bookkeeping records and other financial records, gross receipts and income records, cash receipts and disbursement records and/or journals, sales and purchase records and/or journals, accounts receivables and payable ledgers and records, bad debt records, cost of goods sold records, loan records, including applications, financial statements, and collateral, loan agreements, notes, or mortgages, loan contracts, loan receivable and payable ledgers, sales and expense invoices including all invoices documenting expenses paid by cash (currency) or bank check (cashier or teller checks) and retained copies of any bank checks (cashier or teller checks);

d. Documents, statements, and correspondence related to the preparation of corporate records and/or tax returns for the businesses and individuals described above, including, but not limited to, bookkeepers' and/or accountant's work papers, as well as retained copies of all federal and state

income, payroll, and excise tax returns. Personnel records for the businesses described above, including, but not limited to, work schedules, salaries, benefits, resumes' and payroll records;

e. All savings and checking account records for the businesses and individuals described above, including but not limited to, passbooks or bank statements, records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, records reflecting the identity of checks deposited or drawn on the accounts, withdrawal slips, and records disclosing the disposition of withdrawals, Forms 1099, debit and credit memos, as well as records of any certificates of deposit; money market certificates, U.S. Treasury notes or bills purchased;

f. Any and all other banking and brokerage firm account statements, transaction records, wire transfer instructions and records, receipts, notes, ledgers, checks, cash receipts journals, Federal Reserve routing numbers, passbooks, safe deposit keys, and similar documents and items concerning the receipt, transfer, or secreting of funds in connection with the businesses and/or accounts described above;

g. Correspondence and communication between and among co-conspirators, employees, partners, and/or other participants in such activities, as well as records thereof, including, but not limited to, telephone bills and records, telephone message pads, notes and memoranda, automatic telephone dialing devices and the contents of such devices, telephone number identification devices and the contents of such devices, telephone answering devices and the contents of such devices, telephone subscriber applications, letters, mail, handwritten correspondence and/or notes, FedEx air bills, audio tapes, video tapes, and other documents concerning or reflecting such correspondence and/or communications;

h. Records identifying co-conspirators, employees, partners, and/or other participants in such activities or in the businesses described above, including, but not limited to identification documents, address books, telephone books, rolodex

indices, diaries, calendars, personal notes reflecting telephone and pager numbers, photographs (including still photos, negatives, movies, slides, video tapes, and undeveloped film), and audio tape recordings of conversations, including those made surreptitiously, knowingly, and over telephone answering machines, as well as any other documents concerning or reflecting information regarding the identities of other persons who may have knowledge of facts relevant to the charges at issue.

i. Safes, key-lock strong boxes, suitcases, locked cabinets, concealed storage departments, and other types of locked, closed, and/or hidden containers that may be used to store and secrete United States currency, books, records, documents, financial instruments, and other items of the sort to prevent the discovery of theft of such items; and

j. Computers and other associated computer equipment used to store information relating to the illegal activities, businesses, and/or accounts described above, including, but not limited to, central processing units, external and internal hard drives, external and internal storage equipment or media, terminals or video display units, optical scanners, network servers, electronic mail records, e-mails, CD ROMs, DVDs and other magnetic storage media, computer software, manuals relating to software, files, data and information contained thereon, computerized data storage devices, including data stored on hard disks or floppy disks, computer printouts or computer programs, computer or data processing software or data, electronic organizer devices and the contents of such devices, computerized appointment schedules and diaries, drafts and final versions of documents and correspondence prepared in furtherance of such activities, peripheral equipment such as keyboards, printers, printer buffers, modems or acoustic couplers, fax machines (and data included therein), and magnetic tapes that could contain or be used to transmit or store any of the foregoing records, documents, and materials, along with documentation explaining operation of the computer system, including any and all passwords and any back-up tapes;

all of which constitute evidence and instrumentalities of violations of Title 31, U.S.C., § 5324(a) and Title 26, U.S.C., § 7206(1).

ERIC SULLIVAN
Special Agent
U.S. Department of Treasury
Internal Revenue Service

Sworn to before me this
14th day of January 2008.

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

COPPORATE CHECKING ACCOUNTS
HSBC AND WAMU

| DATE | TRANSACTIONS | EMPIRE SZECHUAN INC<br>WAMU 180-062600-4<br>HSBC 954702832 | EMPIRE SZECHUAN EAST INC.<br>WAMU 180-062603-8<br>HSBC 954703154 | J&C MAIN STREET INC.<br>WAMU 180-062601-2<br>HSBC 954-70387-0 |
|---|---|---|---|---|
| 05/10/2002 | Cash Withdrawal | | $ 9,500.00 | |
| 05/13/2002 | Cash Withdrawal | | | $ 9,500.00 |
| 05/14/2002 | Cash Withdrawal | | $ 9,500.00 | $ 9,200.00 |
| 05/20/2002 | Cash Withdrawal | | $ 9,500.00 | |
| 05/21/2002 | Cash Withdrawal | | | $ 9,500.00 |
| 05/30/2002 | Cash Withdrawal | | $ 9,500.00 | |
| 06/02/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 06/17/2002 | Cash Withdrawal | | $ 9,500.00 | $ 9,500.00 |
| 06/18/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 06/24/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 06/25/2002 | Cash Withdrawal | | $ 9,500.00 | |
| 06/26/2002 | Cash Withdrawal | | | $ 9,500.00 |
| 07/05/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 07/08/2002 | Cash Withdrawal | | $ 9,500.00 | |
| 07/15/2002 | Cash Withdrawal | | | $ 9,500.00 |
| 07/17/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 07/24/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 07/25/2002 | Cash Withdrawal | | $ 9,500.00 | |
| 07/26/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 07/31/2002 | Cash Withdrawal | | | $ 9,500.00 |
| 08/12/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 08/13/2002 | Cash Withdrawal | | $ 9,500.00 | |
| 08/14/2002 | Cash Withdrawal | | | $ 9,500.00 |
| 08/26/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 08/27/2002 | Cash Withdrawal | | | $ 9,500.00 |
| 08/28/2002 | Cash Withdrawal | | $ 9,500.00 | |
| 09/02/2002 | Cash Withdrawal | | | $ 9,500.00 |
| 09/03/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 09/09/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 09/16/2002 | Cash Withdrawal | | $ 9,500.00 | |

Exhibit A

COPPORATE CHECKING ACCOUNTS
HSBC AND WAMU

| DATE | TRANSACTIONS | EMPIRE SZECHUAN INC WAMU 180-062600-4 HSBC 954702832 | EMPIRE SZECHUAN EAST INC. WAMU 180-062603-8 HSBC 954703154 | J&C MAIN STREET INC. WAMU 180-062601-2 HSBC 954-70387-0 |
|---|---|---|---|---|
| 09/20/2002 | Cash Withdrawal | | | $ 9,500.00 |
| 09/24/2002 | Cash Withdrawal | | $ 9,500.00 | |
| 10/03/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 10/08/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 10/15/2002 | Cash Withdrawal | | $ 9,500.00 | |
| 10/15/2002 | Cash Withdrawal | | $ 9,500.00 | |
| 10/16/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 10/18/2002 | Cash Withdrawal | | | $ 9,500.00 |
| 10/22/2002 | Cash Withdrawal | | | $ 9,800.00 |
| 10/28/2002 | Cash Withdrawal | | $ 9,500.00 | |
| 11/05/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 11/13/2002 | Cash Withdrawal | | $ 9,500.00 | |
| 11/14/2002 | Cash Withdrawal | | | $ 9,500.00 |
| 11/15/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 11/18/2002 | Cash Withdrawal | | $ 9,500.00 | |
| 11/25/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 12/02/2002 | Cash Withdrawal | | $ 9,500.00 | |
| 12/03/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 12/09/2002 | Cash Withdrawal | $ 9,500.00 | | |
| 12/13/2002 | Cash Withdrawal | | $ 9,500.00 | |
| 12/19/2002 | Cash Withdrawal | | | $ 9,500.00 |
| 12/31/2002 | Cash Withdrawal | $ 9,500.00 | | $ 9,500.00 |
| 01/02/2003 | Cash Withdrawal | | $ 9,500.00 | |
| 01/03/2003 | Cash Withdrawal | | | $ 9,500.00 |
| 01/08/2003 | Cash Withdrawal | $ 9,500.00 | | |
| 01/09/2003 | Cash Withdrawal | | $ 9,500.00 | |
| 01/22/2003 | Cash Withdrawal | $ 9,500.00 | | |
| 01/23/2003 | Cash Withdrawal | | | $ 9,500.00 |
| 01/24/2003 | Cash Withdrawal | | $ 9,500.00 | |
| 02/05/2003 | Cash Withdrawal | $ 9,500.00 | | |
| 02/07/2003 | Cash Withdrawal | | $ 9,500.00 | |

Exhibit A

COPPORATE CHECKING ACCOUNTS
HSBC AND WAMU

| DATE | TRANSACTIONS | EMPIRE SZECHUAN INC WAMU 180-062600-4 HSBC 954702832 | EMPIRE SZECHUAN EAST INC. WAMU 180-062603-8 HSBC 954703154 | J&C MAIN STREET INC. WAMU 180-062601-2 HSBC 954-70387-0 |
|---|---|---|---|---|
| 02/10/2003 | Cash Withdrawal | $ 9,500.00 | | |
| 02/11/2003 | Cash Withdrawal | | | $ [illegible],500.00 |
| 02/13/2003 | Cash Withdrawal | | $ 9,500.00 | |
| 02/25/2003 | Cash Withdrawal | $ 9,500.00 | | |
| 02/26/2003 | Cash Withdrawal | | $ 9,500.00 | |
| 03/03/2003 | Cash Withdrawal | $ 9,500.00 | | |
| 03/13/2003 | Cash Withdrawal | $ 9,500.00 | | |
| 03/17/2003 | Cash Withdrawal | | | $ 9,500.00 |
| 03/18/2003 | Cash Withdrawal | | $ 9,500.00 | |
| 03/19/2003 | Cash Withdrawal | | | $ 9,500.00 |
| 03/21/2003 | Cash Withdrawal | $ 9,500.00 | | |
| 03/25/2003 | Cash Withdrawal | | $ 9,500.00 | |
| 03/27/2003 | Cash Withdrawal | | | $ 9,500.00 |
| 04/02/2003 | Cash Withdrawal | | | $ 9,500.00 |
| 04/07/2003 | Cash Withdrawal | $ 9,500.00 | | |
| 04/08/2003 | Cash Withdrawal | | $ 9,500.00 | |
| 04/10/2003 | Cash Withdrawal | $ 9,500.00 | | |
| 04/28/2003 | Cash Withdrawal | | | $ 8,800.00 |
| 04/29/2003 | Cash Withdrawal | $ 8,600.00 | | |
| 05/07/2003 | Cash Withdrawal | $ 9,200.00 | | |
| 05/08/2003 | Cash Withdrawal | | $ 8,600.00 | |
| 05/09/2003 | Cash Withdrawal | | | $ 8,900.00 |
| 05/14/2003 | Cash Withdrawal | | | $ 9,200.00 |
| 05/28/2003 | Cash Withdrawal | $ 9,250.00 | | |
| 06/12/2003 | Cash Withdrawal | $ 8,900.00 | | |
| 06/17/2003 | Cash Withdrawal | | | $ 9,100.00 |
| 06/20/2003 | Cash Withdrawal | | $ 4,800.00 | |
| 06/25/2003 | Cash Withdrawal | | $ 4,650.00 | |
| 06/26/2003 | Cash Withdrawal | $ 5,300.00 | | |
| 06/27/2003 | Cash Withdrawal | | | $ 6,400.00 |
| 06/30/2003 | Cash Withdrawal | | $ 5,700.00 | |

Exhibit A

COPPORATE CHECKING ACCOUNTS
HSBC AND WAMU

| DATE | TRANSACTIONS | EMPIRE SZECHUAN INC WAMU 180-062600-4 HSBC 954702832 | EMPIRE SZECHUAN EAST INC. WAMU 180-062603-8 HSBC 954703154 | J&C MAIN STREET INC. WAMU 180-062601-2 HSBC 954-70387-0 |
|---|---|---|---|---|
| 07/07/2003 | Cash Withdrawal | | $ 4,950.00 | |
| 07/08/2003 | Cash Withdrawal | $ 5,300.00 | | |
| 07/14/2003 | Cash Withdrawal | $ 5,600.00 | | |
| 07/16/2003 | Cash Withdrawal | | | $ 6,300.00 |
| 07/17/2003 | Cash Withdrawal | | $ 5,850.00 | |
| 07/21/2003 | Cash Withdrawal | $ 5,800.00 | | |
| 07/22/2003 | Cash Withdrawal | | $ 6,200.00 | |
| 07/24/2003 | Cash Withdrawal | | | $ 5,700.00 |
| 08/05/2003 | Cash Withdrawal | | $ 5,700.00 | |
| 08/06/2003 | Cash Withdrawal | $ 6,300.00 | | |
| 08/11/2003 | Cash Withdrawal | | | $ 4,600.00 |
| 08/18/2003 | Cash Withdrawal | $ 6,150.00 | | |
| 08/22/2003 | Cash Withdrawal | $ 5,800.00 | | |
| 08/25/2003 | Cash Withdrawal | | $ 5,600.00 | |
| 08/28/2003 | Cash Withdrawal | | | $ 6,300.00 |
| 08/29/2003 | Cash Withdrawal | $ 5,100.00 | | |
| 09/02/2003 | Cash Withdrawal | | | $ 4,600.00 |
| 09/08/2003 | Cash Withdrawal | $ 6,300.00 | | |
| 09/10/2003 | Cash Withdrawal | | $ 5,700.00 | |
| 09/15/2003 | Cash Withdrawal | $ 4,600.00 | | |
| 09/17/2003 | Cash Withdrawal | | $ 4,800.00 | |
| 09/22/2003 | Cash Withdrawal | $ 4,950.00 | | |
| 09/25/2003 | Cash Withdrawal | | | $ 4,600.00 |
| 09/26/2003 | Cash Withdrawal | | $ 5,200.00 | |
| 09/29/2003 | Cash Withdrawal | | $ 4,500.00 | |
| 10/02/2003 | Cash Withdrawal | $ 4,700.00 | | $ 4,800.00 |
| 10/07/2003 | Cash Withdrawal | | $ 4,200.00 | $ 5,300.00 |
| 10/14/2003 | Cash Withdrawal | $ 4,300.00 | | $ 5,200.00 |
| 10/15/2003 | Cash Withdrawal | | $ 4,600.00 | $ 4,900.00 |
| 10/17/2003 | Cash Withdrawal | | $ 5,200.00 | |
| 10/20/2003 | Cash Withdrawal | $ 3,900.00 | | $ 4,700.00 |

Exhibit A

COPPORATE CHECKING ACCOUNTS
HSBC AND WAMU

| DATE | TRANSACTIONS | EMPIRE SZECHUAN INC WAMU 180-062600-4 HSBC 954702832 | EMPIRE SZECHUAN EAST INC. WAMU 180-062603-8 HSBC 954703154 | J&C MAIN STREET INC. WAMU 180-062601-2 HSBC 954-70387-0 |
|---|---|---|---|---|
| 10/20/2003 | Cash Withdrawal | $ 4,800.00 | | |
| 10/27/2003 | Cash Withdrawal | $ 4,600.00 | | $ 4,900.00 |
| 11/03/2003 | Cash Withdrawal | | $ 4,900.00 | $ 4,800.00 |
| 11/05/2003 | Cash Withdrawal | $ 4,700.00 | $ 4,800.00 | |
| 11/07/2003 | Cash Withdrawal | | $ 4,900.00 | $ 4,800.00 |
| 11/12/2003 | Cash Withdrawal | $ 4,750.00 | $ 4,850.00 | |
| 11/14/2003 | Cash Withdrawal | $ 4,900.00 | $ 4,950.00 | |
| 11/17/2003 | Cash Withdrawal | | $ 4,900.00 | $ 4,800.00 |
| 11/21/2003 | Cash Withdrawal | $ 4,700.00 | $ 4,800.00 | |
| 11/24/2003 | Cash Withdrawal | | $ 4,800.00 | $ 4,800.00 |
| 12/01/2003 | Cash Withdrawal | $ 9,700.00 | | |
| 12/03/2003 | Cash Withdrawal | $ 4,900.00 | $ 4,800.00 | |
| 12/08/2003 | Cash Withdrawal | $ 4,800.00 | $ 4,700.00 | |
| 12/11/2003 | Cash Withdrawal | $ 4,800.00 | | $ 4,900.00 |
| 12/19/2003 | Cash Withdrawal | $ 4,900.00 | | $ 4,900.00 |
| 12/23/2003 | Cash Withdrawal | $ 4,800.00 | $ 4,900.00 | |
| 12/24/2003 | Cash Withdrawal | $ 4,800.00 | | |
| 12/26/2003 | Cash Withdrawal | | | $ 4,900.00 |
| 12/29/2003 | Cash Withdrawal | $ 4,900.00 | $ 4,900.00 | $ 4,900.00 |
| 01/05/2004 | Cash Withdrawal | | $ 4,800.00 | $ 4,900.00 |
| 01/06/2004 | Cash Withdrawal | $ 4,800.00 | | |
| 01/07/2004 | Cash Withdrawal | | | $ 4,800.00 |
| 01/08/2004 | Cash Withdrawal | $ 4,700.00 | $ 4,900.00 | |
| 01/12/2004 | Cash Withdrawal | | $ 4,900.00 | $ 4,900.00 |
| 01/13/2004 | Cash Withdrawal | | | $ 9,800.00 |
| 01/15/2004 | Cash Withdrawal | $ 4,900.00 | $ 4,800.00 | |
| 01/21/2004 | Cash Withdrawal | $ 4,900.00 | | $ 4,800.00 |
| 01/22/2004 | Cash Withdrawal | $ 4,900.00 | $ 4,900.00 | |
| 01/23/2004 | Cash Withdrawal | $ 4,900.00 | $ 4,900.00 | |
| 01/29/2004 | Cash Withdrawal | $ 4,900.00 | | $ 4,900.00 |
| 02/02/2004 | Cash Withdrawal | | | $ 4,900.00 |

**Exhibit A**

COPPORATE CHECKING ACCOUNTS
HSBC AND WAMU

| | | EMPIRE SZECHUAN INC | | EMPIRE SZECHUAN EAST INC. | | J&C MAIN STREET INC. | |
|---|---|---|---|---|---|---|---|
| | | WAMU 180-062600-4 | | WAMU 180-062603-8 | | WAMU 180-062601-2 | |
| DATE | TRANSACTIONS | HSBC 954702832 | | HSBC 954703154 | | HSBC 954-70387-0 | |
| 02/03/2004 | Cash Withdrawal | $ | 4,900.00 | | | | |
| 02/23/2004 | Cash Withdrawal | $ | 4,900.00 | $ | 4,900.00 | | |
| 02/23/2004 | Cash Withdrawal | $ | 4,900.00 | $ | 4,900.00 | | |
| 02/24/2004 | Cash Withdrawal | $ | 4,000.00 | | | | |
| 02/25/2004 | Cash Withdrawal | | | | | $ | 4,900.00 |
| 03/01/2004 | Cash Withdrawal | | | $ | 4,900.00 | | |
| 03/04/2004 | Cash Withdrawal | $ | 4,800.00 | $ | 4,900.00 | | |
| 03/08/2004 | Cash Withdrawal | $ | 4,900.00 | $ | 4,900.00 | | |
| 03/12/2004 | Cash Withdrawal | $ | 4,900.00 | $ | 4,900.00 | | |
| 03/15/2004 | Cash Withdrawal | | | | | $ | 9,300.00 |
| 03/22/2004 | Cash Withdrawal | $ | 4,900.00 | | | $ | 4,900.00 |
| 03/24/2004 | Cash Withdrawal | $ | 4,950.00 | $ | 4,950.00 | | |
| 04/05/2004 | Cash Withdrawal | | | $ | 4,950.00 | $ | 4,950.00 |
| 04/06/2004 | Cash Withdrawal | | | | | | |
| 04/14/2004 | Cash Withdrawal | | | $ | 4,950.00 | $ | 4,950.00 |
| 04/15/2004 | Cash Withdrawal | $ | 4,900.00 | $ | 4,900.00 | | |
| 04/16/2004 | Cash Withdrawal | $ | 4,800.00 | | | $ | 4,900.00 |
| 04/23/2004 | Cash Withdrawal | $ | 4,800.00 | | | $ | 4,700.00 |
| 04/26/2004 | Cash Withdrawal | $ | 4,700.00 | | | $ | 4,800.00 |
| 04/27/2004 | Cash Withdrawal | $ | 4,900.00 | | | $ | 4,900.00 |
| 05/06/2004 | Cash Withdrawal | | | $ | 4,800.00 | $ | 4,700.00 |
| 05/07/2004 | Cash Withdrawal | $ | 4,850.00 | $ | 4,950.00 | | |
| 05/10/2004 | Cash Withdrawal | $ | 4,950.00 | $ | 4,850.00 | | |
| 05/11/2004 | Cash Withdrawal | | | $ | 4,800.00 | $ | 4,900.00 |
| 05/24/2004 | Cash Withdrawal | $ | 4,800.00 | $ | 4,900.00 | | |
| 05/25/2004 | Cash Withdrawal | $ | 4,900.00 | $ | 4,800.00 | | |
| 06/04/2004 | Cash Withdrawal | $ | 4,750.00 | $ | 4,850.00 | | |
| 06/07/2004 | Cash Withdrawal | $ | 4,850.00 | $ | 4,950.00 | | |
| 06/10/2004 | Cash Withdrawal | $ | 4,700.00 | $ | 4,900.00 | | |
| 06/14/2004 | Cash Withdrawal | $ | 4,800.00 | | | $ | 4,800.00 |
| 06/28/2004 | Cash Withdrawal | $ | 4,900.00 | $ | 4,800.00 | $ | 4,900.00 |

**Exhibit A**

JAN 14 '08 13:28 5166835383

COPPORATE CHECKING ACCOUNTS
HSBC AND WAMU

| DATE | TRANSACTIONS | EMPIRE SZECHUAN INC<br>WAMU 180-062600-4<br>HSBC 954702832 | EMPIRE SZECHUAN EAST INC.<br>WAMU 180-062603-8<br>HSBC 954703154 | J&C MAIN STREET INC.<br>WAMU 180-062601-2<br>HSBC 954-70387-0 |
|---|---|---|---|---|
| 06/28/2004 | Cash Withdrawal | $ 4,800.00 | | |
| 07/02/2004 | Cash Withdrawal | $ 4,900.00 | | $ 4,900.00 |
| 07/06/2004 | Cash Withdrawal | $ 4,900.00 | | $ 4,800.00 |
| 07/07/2004 | Cash Withdrawal | $ 4,800.00 | $ 4,700.00 | |
| 07/08/2004 | Cash Withdrawal | | $ 4,900.00 | $ 4,800.00 |
| 07/09/2004 | Cash Withdrawal | $ 4,900.00 | | $ 4,800.00 |
| 07/12/2004 | Cash Withdrawal | | $ 4,700.00 | $ 4,800.00 |
| 07/13/2004 | Cash Withdrawal | | $ 4,600.00 | $ 4,700.00 |
| 07/19/2004 | Cash Withdrawal | $ 4,900.00 | $ 4,900.00 | |
| 07/21/2004 | Cash Withdrawal | | $ 4,700.00 | |
| 07/26/2004 | Cash Withdrawal | $ 4,900.00 | | $ 4,800.00 |
| 08/05/2004 | Cash Withdrawal | $ 4,900.00 | $ 4,800.00 | |
| 08/09/2004 | Cash Withdrawal | $ 4,700.00 | | $ 4,800.00 |
| 08/16/2004 | Cash Withdrawal | $ 4,800.00 | $ 4,900.00 | $ 4,900.00 |
| 08/16/2004 | Cash Withdrawal | $ 4,900.00 | | |
| 08/20/2004 | Cash Withdrawal | $ 4,800.00 | $ 4,700.00 | |
| 08/24/2004 | Cash Withdrawal | $ 4,800.00 | | $ 4,900.00 |
| 08/25/2004 | Cash Withdrawal | $ 4,900.00 | | $ 4,800.00 |
| 09/02/2004 | Cash Withdrawal | $ 4,800.00 | | $ 4,800.00 |
| 09/07/2004 | Cash Withdrawal | $ 4,850.00 | $ 4,850.00 | |
| 09/13/2004 | Cash Withdrawal | $ 4,800.00 | | $ 4,800.00 |
| 09/14/2004 | Cash Withdrawal | $ 4,700.00 | $ 4,900.00 | |
| 09/23/2004 | Cash Withdrawal | $ 4,900.00 | $ 4,800.00 | |
| 09/24/2004 | Cash Withdrawal | $ 4,800.00 | | $ 4,900.00 |
| 09/30/2004 | Cash Withdrawal | $ 4,900.00 | $ 4,900.00 | |
| 10/12/2004 | Cash Withdrawal | | | $ 4,950.00 |
| 10/13/2004 | Cash Withdrawal | $ 4,900.00 | $ 4,900.00 | |
| 10/14/2004 | Cash Withdrawal | | $ 4,800.00 | $ 4,900.00 |
| 10/15/2004 | Cash Withdrawal | $ 4,950.00 | | $ 4,850.00 |
| 10/22/2004 | Cash Withdrawal | $ 4,850.00 | $ 4,950.00 | |
| 10/25/2004 | Cash Withdrawal | | $ 4,850.00 | $ 4,900.00 |

Exhibit A

COPPORATE CHECKING ACCOUNTS
HSBC AND WAMU

| DATE | TRANSACTIONS | EMPIRE SZECHUAN INC<br>WAMU 180-062600-4<br>HSBC 954702832 | EMPIRE SZECHUAN EAST INC.<br>WAMU 180-062603-8<br>HSBC 954703154 | J&C MAIN STREET INC.<br>WAMU 180-062601-2<br>HSBC 954-70387-0 |
|---|---|---|---|---|
| 10/26/2004 | Cash Withdrawal | $ 4,750.00 | | |
| 11/02/2004 | Cash Withdrawal | $ 4,900.00 | $ 4,900.00 | $ 4,800.00 |
| 11/04/2004 | Cash Withdrawal | | | $ 4,900.00 |
| 11/05/2004 | Cash Withdrawal | $ 4,800.00 | | $ 4,900.00 |
| 11/08/2004 | Cash Withdrawal | | $ 4,800.00 | |
| 11/18/2004 | Cash Withdrawal | | $ 4,800.00 | |
| 11/19/2004 | Cash Withdrawal | $ 4,800.00 | $ 4,900.00 | $ 4,900.00 |
| 11/22/2004 | Cash Withdrawal | $ 4,900.00 | | |
| 11/24/2004 | Cash Withdrawal | $ 4,800.00 | | $ 4,800.00 |
| 11/26/2004 | Cash Withdrawal | | | $ 4,900.00 |
| 11/29/2004 | Cash Withdrawal | $ 4,700.00 | $ 4,900.00 | $ 4,900.00 |
| 11/30/2004 | Cash Withdrawal | $ 4,900.00 | $ 4,800.00 | |
| 12/08/2004 | Cash Withdrawal | $ 4,800.00 | | $ 4,700.00 |
| 12/17/2004 | Cash Withdrawal | | $ 4,900.00 | $ 4,900.00 |
| 12/27/2004 | Cash Withdrawal | $ 4,900.00 | $ 4,800.00 | |
| 01/03/2005 | Cash Withdrawal | $ 4,800.00 | $ 4,900.00 | |
| 01/04/2005 | Cash Withdrawal | $ 4,900.00 | | $ 4,800.00 |
| 01/07/2005 | Cash Withdrawal | | $ 4,700.00 | $ 4,800.00 |
| 01/11/2005 | Cash Withdrawal | $ 4,800.00 | $ 4,800.00 | |
| 01/13/2005 | Cash Withdrawal | $ 4,900.00 | | $ 4,700.00 |
| 01/18/2005 | Cash Withdrawal | $ 4,700.00 | | $ 4,900.00 |
| 01/20/2005 | Cash Withdrawal | | $ 4,800.00 | $ 4,900.00 |
| 01/25/2005 | Cash Withdrawal | $ 4,900.00 | | $ 4,800.00 |
| 01/26/2005 | Cash Withdrawal | $ 4,800.00 | $ 4,700.00 | |
| 01/28/2005 | Cash Withdrawal | | $ 4,800.00 | $ 4,900.00 |
| 02/01/2005 | Cash Withdrawal | $ 4,900.00 | | $ 4,800.00 |
| 02/02/2005 | Cash Withdrawal | | $ 4,900.00 | $ 4,900.00 |
| 02/03/2005 | Cash Withdrawal | | $ 4,700.00 | $ 4,900.00 |
| 02/10/2005 | Cash Withdrawal | $ 4,800.00 | | $ 4,900.00 |
| 02/22/2005 | Cash Withdrawal | $ 4,900.00 | | $ 4,900.00 |
| 02/26/2005 | Cash Withdrawal | | $ 4,900.00 | $ 4,900.00 |

Exhibit A

COPPORATE CHECKING ACCOUNTS
HSBC AND WAMU

| DATE | TRANSACTIONS | EMPIRE SZECHUAN INC WAMU 180-062600-4 HSBC 954702832 | EMPIRE SZECHUAN EAST INC. WAMU 180-062603-8 HSBC 954703154 | J&C MAIN STREET INC. WAMU 180-062601-2 HSBC 954-70387-0 |
|---|---|---|---|---|
| 02/28/2005 | Cash Withdrawal | $ 4,900.00 | | |
| 03/01/2005 | Cash Withdrawal | | | $ 4,900.00 |
| 03/07/2005 | Cash Withdrawal | $ 4,800.00 | | |
| 03/12/2005 | Cash Withdrawal | | | $ 4,800.00 |
| 03/14/2005 | Cash Withdrawal | $ 4,900.00 | | $ 9,700.00 |
| 03/14/2005 | Cash Withdrawal | $ 4,900.00 | | $ 4,900.00 |
| 03/18/2005 | Cash Withdrawal | $ 4,800.00 | $ 4,900.00 | $ 4,800.00 |
| 03/23/2005 | Cash Withdrawal | | | |
| 03/25/2005 | Cash Withdrawal | $ 4,900.00 | | $ 4,900.00 |
| 03/31/2005 | Cash Withdrawal | $ 4,950.00 | | $ 4,900.00 |
| 04/08/2005 | Cash Withdrawal | $ 4,900.00 | $ 4,800.00 | $ 4,850.00 |
| 04/11/2005 | Cash Withdrawal | $ 4,900.00 | | |
| 04/12/2005 | Cash Withdrawal | $ 4,800.00 | | $ 4,900.00 |
| 04/13/2005 | Cash Withdrawal | $ 4,900.00 | | $ 4,900.00 |
| 04/14/2005 | Cash Withdrawal | $ 4,900.00 | $ 4,900.00 | $ 4,800.00 |
| 04/18/2005 | Cash Withdrawal | $ 4,900.00 | | |
| 04/21/2005 | Cash Withdrawal | $ 4,900.00 | $ 4,800.00 | $ 4,900.00 |
| 04/22/2005 | Cash Withdrawal | $ 4,800.00 | | |
| 05/06/2005 | Cash Withdrawal | $ 4,900.00 | | $ 4,900.00 |
| 05/10/2005 | Cash Withdrawal | $ 4,800.00 | $ 4,900.00 | $ 4,900.00 |
| 05/12/2005 | Cash Withdrawal | $ 4,900.00 | | |
| 05/14/2005 | Cash Withdrawal | $ 4,900.00 | | $ 4,900.00 |
| 05/16/2005 | Cash Withdrawal | | $ 4,900.00 | $ 4,900.00 |
| 05/18/2005 | Cash Withdrawal | $ 4,300.00 | | $ 4,900.00 |
| 05/23/2005 | Cash Withdrawal | | | $ 3,800.00 |
| 05/24/2005 | Cash Withdrawal | $ 4,600.00 | | $ 3,900.00 |
| 05/31/2005 | Cash Withdrawal | | $ 4,700.00 | |
| 06/02/2005 | Cash Withdrawal | | | $ 4,850.00 |
| 06/03/2005 | Cash Withdrawal | $ 4,800.00 | | $ 4,600.00 |
| 06/08/2005 | Cash Withdrawal | $ 4,000.00 | $ 4,400.00 | $ 4,300.00 |
| 06/09/2005 | Cash Withdrawal | $ 4,700.00 | $ 4,200.00 | $ 4,100.00 |

Exhibit A

5166835383 P.05/10

JAN 14 '08 13:29

COPPORATE CHECKING ACCOUNTS
HSBC AND WAMU

| DATE | TRANSACTIONS | EMPIRE SZECHUAN INC WAMU 180-062600-4 HSBC 954702832 | EMPIRE SZECHUAN EAST INC. WAMU 180-062603-8 HSBC 954703154 | J&C MAIN STREET INC. WAMU 180-062601-2 HSBC 954-70387-0 |
|---|---|---|---|---|
| 06/10/2005 | Cash Withdrawal | | | $ 4,300.00 |
| 06/13/2005 | Cash Withdrawal | | $ 4,000.00 | |
| 06/21/2005 | Cash Withdrawal | $ 4,200.00 | | $ 4,100.00 |
| 06/22/2005 | Cash Withdrawal | | $ 4,200.00 | |
| 06/29/2005 | Cash Withdrawal | $ 4,400.00 | | $ 4,800.00 |
| 07/05/2005 | Cash Withdrawal | | $ 4,800.00 | $ 4,800.00 |
| 07/06/2005 | Cash Withdrawal | $ 4,600.00 | | |
| 07/11/2005 | Cash Withdrawal | $ 4,800.00 | | $ 4,600.00 |
| 07/13/2005 | Cash Withdrawal | | $ 4,800.00 | |
| 07/14/2005 | Cash Withdrawal | $ 4,400.00 | | |
| 07/15/2005 | Cash Withdrawal | | $ 4,200.00 | $ 4,300.00 |
| 07/18/2005 | Cash Withdrawal | $ 4,800.00 | | |
| 07/22/2005 | Cash Withdrawal | $ 4,800.00 | | $ 4,700.00 |
| 07/27/2005 | Cash Withdrawal | $ 4,700.00 | $ 4,300.00 | $ 4,800.00 |
| 08/01/2005 | Cash Withdrawal | $ 4,900.00 | | |
| 08/02/2005 | Cash Withdrawal | | | $ 4,800.00 |
| 08/08/2005 | Cash Withdrawal | $ 4,900.00 | $ 4,700.00 | |
| 08/10/2005 | Cash Withdrawal | | $ 4,300.00 | $ 4,900.00 |
| 08/15/2005 | Cash Withdrawal | $ 7,000.00 | $ 4,800.00 | $ 4,900.00 |
| 08/22/2005 | Cash Withdrawal | $ 7,200.00 | | |
| 09/06/2005 | Cash Withdrawal | $ 4,800.00 | | $ 4,700.00 |
| 09/12/2005 | Cash Withdrawal | $ 7,400.00 | | |
| 09/13/2005 | Cash Withdrawal | | | $ 7,400.00 |
| 09/16/2005 | Cash Withdrawal | | $ 6,200.00 | |
| 09/19/2005 | Cash Withdrawal | $ 5,800.00 | | $ 7,100.00 |
| 09/21/2005 | Cash Withdrawal | $ 6,800.00 | | |
| 09/26/2005 | Cash Withdrawal | | $ 7,400.00 | |
| 10/12/2005 | Cash Withdrawal | | $ 7,100.00 | $ 7,900.00 |
| 10/13/2005 | Cash Withdrawal | $ 7,300.00 | | |
| 10/17/2005 | Cash Withdrawal | $ 7,800.00 | | |
| 10/18/2005 | Cash Withdrawal | | | $ 6,900.00 |

Exhibit A

COPPORATE CHECKING ACCOUNTS
HSBC AND WAMU

| DATE | TRANSACTIONS | EMPIRE SZECHUAN INC WAMU 180-062600-4 HSBC 954702832 | EMPIRE SZECHUAN EAST INC. WAMU 180-062603-8 HSBC 954703154 | J&C MAIN STREET INC. WAMU 180-062601-2 HSBC 954-70387-0 |
|---|---|---|---|---|
| 10/20/2005 | Cash Withdrawal | | $ 5,300.00 | $ 7,400.00 |
| 10/21/2005 | Cash Withdrawal | $ 5,700.00 | | $ 7,100.00 |
| 10/25/2005 | Cash Withdrawal | $ 6,900.00 | | |
| 10/26/2005 | Cash Withdrawal | | $ 6,300.00 | |
| 11/02/2006 | Cash Withdrawal | $ 7,400.00 | | |
| 11/04/2005 | Cash Withdrawal | | $ 7,300.00 | |
| 11/07/2005 | Cash Withdrawal | | | $ 6,000.00 |
| 11/08/2005 | Cash Withdrawal | $ 7,200.00 | | |
| 11/09/2005 | Cash Withdrawal | | $ 7,200.00 | |
| 11/10/2005 | Cash Withdrawal | | | $ 7,200.00 |
| 11/14/2005 | Cash Withdrawal | $ 6,500.00 | | |
| 11/18/2005 | Cash Withdrawal | $ 8,800.00 | | |
| 11/22/2005 | Cash Withdrawal | | | $ 7,400.00 |
| 12/01/2005 | Cash Withdrawal | $ 9,300.00 | | |
| 12/06/2005 | Cash Withdrawal | $ 8,800.00 | | |
| 12/15/2005 | Cash Withdrawal | | | $ 8,000.00 |
| 12/22/2005 | Cash Withdrawal | $ 7,500.00 | | |
| 01/06/2006 | Cash Withdrawal | $ 8,700.00 | | |
| 01/11/2006 | Cash Withdrawal | | $ 8,800.00 | |
| 01/12/2006 | Cash Withdrawal | | | $ 8,100.00 |
| 01/17/2006 | Cash Withdrawal | $ 8,200.00 | | |
| 01/19/2006 | Cash Withdrawal | | $ 7,400.00 | |
| 01/23/2006 | Cash Withdrawal | | | $ 7,800.00 |
| 01/25/2006 | Cash Withdrawal | $ 7,400.00 | | |
| 02/03/2006 | Cash Withdrawal | | | $ 9,100.00 |
| 02/08/2006 | Cash Withdrawal | | $ 8,400.00 | |
| 02/14/2006 | Cash Withdrawal | | | $ 7,800.00 |
| 02/21/2006 | Cash Withdrawal | | | $ 8,600.00 |
| 03/02/2006 | Cash Withdrawal | $ 8,100.00 | | |
| 03/09/2006 | Cash Withdrawal | | $ 8,200.00 | |
| 03/24/2006 | Cash Withdrawal | $ 8,900.00 | | |

Exhibit A

JAN 14 '08 13:30

COPPORATE CHECKING ACCOUNTS
HSBC AND WAMU

| DATE | TRANSACTIONS | EMPIRE SZECHUAN INC WAMU 180-062600-4 HSBC 954702832 | EMPIRE SZECHUAN EAST INC WAMU 180-062603-8 HSBC 954703154 | J&C MAIN STREET INC. WAMU 180-062601-2 HSBC 954-70387-0 |
|---|---|---|---|---|
| 03/27/2006 | Cash Withdrawal | | | |
| 03/02/2006 | Cash Withdrawal | $ 8,100.00 | $ 8,600.00 | $ 8,200.00 |
| 03/24/2006 | Cash Withdrawal | $ 8,900.00 | | |
| 03/30/2006 | Cash Withdrawal | $ 7,800.00 | | |
| 03/31/2006 | Cash Withdrawal | | | |
| 04/03/2006 | Cash Withdrawal | $ 8,600.00 | | $ 8,400.00 |
| 04/10/2006 | Cash Withdrawal | | | |
| 04/25/2006 | Cash Withdrawal | $ 8,800.00 | $ 8,200.00 | |
| 04/26/2006 | Cash Withdrawal | | | |
| 05/03/2006 | Cash Withdrawal | $ 8,600.00 | | $ 8,600.00 |
| 05/08/2006 | Cash Withdrawal | | | |
| 05/16/2006 | Cash Withdrawal | $ 7,600.00 | | $ 9,200.00 |
| 05/17/2006 | Cash Withdrawal | | | |
| 05/18/2006 | Cash Withdrawal | | | $ 7,800.00 |
| 05/22/2006 | Cash Withdrawal | | $ 8,700.00 | |
| 05/24/2006 | Cash Withdrawal | $ 8,900.00 | $ 7,600.00 | |
| 05/30/2006 | Cash Withdrawal | | | |
| 06/05/2006 | Cash Withdrawal | $ 8,300.00 | | $ 8,300.00 |
| 06/07/2006 | Cash Withdrawal | | | |
| 06/12/2006 | Cash Withdrawal | | | $ 8,900.00 |
| 06/13/2006 | Cash Withdrawal | $ 7,600.00 | $ 7,600.00 | |
| 06/19/2006 | Cash Withdrawal | $ 8,600.00 | | |
| 06/20/2006 | Cash Withdrawal | | | |
| 06/22/2006 | Cash Withdrawal | $ 6,200.00 | $ 4,200.00 | $ 4,700.00 |
| 06/28/2006 | Cash Withdrawal | $ 6,300.00 | | |
| 06/30/2006 | Cash Withdrawal | | | |
| 07/10/2006 | Cash Withdrawal | $ 8,400.00 | $ 8,900.00 | |
| 07/11/2006 | Cash Withdrawal | | | |
| 07/14/2006 | Cash Withdrawal | | | $ 8,800.00 |
| 07/18/2006 | Cash Withdrawal | | | $ 9,200.00 |
| 07/25/2006 | Cash Withdrawal | | $ 8,600.00 | $ 8,300.00 |

Exhibit A

COPPORATE CHECKING ACCOUNTS
HSBC AND WAMU

| DATE | TRANSACTIONS | EMPIRE SZECHUAN INC WAMU 180-062600-4 HSBC 954702832 | | EMPIRE SZECHUAN EAST INC. WAMU 180-062603-8 HSBC 954703154 | | JBC MAIN STREET INC. WAMU 180-062601-2 HSBC 954-70387-0 | |
|---|---|---|---|---|---|---|---|
| 07/28/2006 | Cash Withdrawal | | | | | $ | 6,700.00 |
| 07/31/2006 | Cash Withdrawal | $ | 9,300.00 | | | | |
| 08/09/2006 | Cash Withdrawal | $ | 7,800.00 | | | | |
| 08/11/2006 | Cash Withdrawal | | | | | $ | 7,800.00 |
| 08/14/2006 | Cash Withdrawal | $ | 8,900.00 | | | | |
| 08/18/2006 | Cash Withdrawal | | | $ | 7,200.00 | | |
| 08/31/2006 | Cash Withdrawal | $ | 9,300.00 | | | | |
| 09/06/2006 | Cash Withdrawal | $ | 8,400.00 | | | | |
| 09/08/2006 | Cash Withdrawal | | | | | $ | 8,700.00 |
| 09/11/2006 | Cash Withdrawal | $ | 8,800.00 | | | | |
| 09/12/2006 | Cash Withdrawal | $ | 8,300.00 | | | | |
| 09/14/2006 | Cash Withdrawal | | | | | $ | 8,700.00 |
| 09/27/2006 | Cash Withdrawal | | | | | $ | 8,200.00 |
| 09/28/2006 | Cash Withdrawal | | | $ | 7,400.00 | | |
| 09/29/2006 | Cash Withdrawal | $ | 8,800.00 | | | | |
| 10/06/2006 | Cash Withdrawal | $ | 7,600.00 | | | | |
| 10/23/2006 | Cash Withdrawal | | | | | $ | 8,200.00 |
| 10/25/2006 | Cash Withdrawal | | | $ | 3,600.00 | | |
| 10/30/2006 | Cash Withdrawal | | | | | $ | 6,800.00 |
| 11/02/2006 | Cash Withdrawal | | | | | $ | 7,300.00 |
| 11/03/2006 | Cash Withdrawal | | | $ | 6,300.00 | | |
| 11/21/2006 | Cash Withdrawal | | | | | $ | 8,400.00 |
| 11/24/2006 | Cash Withdrawal | | | $ | 7,800.00 | | |
| 11/27/2006 | Cash Withdrawal | | | | | $ | 8,200.00 |
| 12/12/2006 | Cash Withdrawal | | | | | $ | 7,600.00 |
| 12/19/2006 | Cash Withdrawal | | | | | $ | 7,600.00 |
| 01/08/2007 | Cash Withdrawal | | | $ | 9,200.00 | $ | 8,900.00 |
| 01/19/2007 | Cash Withdrawal | | | | | $ | 9,300.00 |
| 02/06/2007 | Cash Withdrawal | | | | | $ | 9,200.00 |
| 02/13/2007 | Cash Withdrawal | | | $ | 9,400.00 | | |
| 02/21/2007 | Cash Withdrawal | | | | | | |
| | | | | | | $ | 9,400.00 |

Exhibit A

CORPORATE CHECKING ACCOUNTS
HSBC AND WAMU

| DATE | TRANSACTIONS | EMPIRE SZECHUAN INC<br>WAMU 180-062600-4<br>HSBC 954702832 | EMPIRE SZECHUAN EAST INC.<br>WAMU 180-062603-8<br>HSBC 954703154 | J&C MAIN STREET INC.<br>WAMU 180-062601-2<br>HSBC 954-70387-0 |
|---|---|---|---|---|
| 02/26/2007 | Cash Withdrawal | | | $ 8,800.00 |
| 03/09/2007 | Cash Withdrawal | | $ 9,300.00 | |
| 03/14/2007 | Cash Withdrawal | | | $ 8,800.00 |
| 04/11/2007 | Cash Withdrawal | | $ 9,400.00 | |
| 04/12/2007 | Cash Withdrawal | | | $ 9,200.00 |
| 04/30/2007 | Cash Withdrawal | | | $ 9,400.00 |
| | TOTALS | $ 1,132,900.00 | $ 855,250.00 | $ 945,400.00 |
| | TOTAL | | | $ 2,933,550.00 |

Exhibit A